**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KATHERINE PRUTZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1600-SDD-RLB** |
| **ONE WORLD TECHNOLOGIES, INC.,** <br> **HOME DEPOT U.S.A., INC.,** <br> **STAN PRUTZ, and** <br> **XYZ INSURANCE COMPANIES** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 6, 2024.

**RICHARD L. BOURGEOIS, JR.** <br>
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHERINE PRUTZ | CIVIL ACTION |
| VERSUS | NO. 23-1600-SDD-RLB |
| ONE WORLD TECHNOLOGIES, INC.,<br>HOME DEPOT U.S.A., INC.,<br>STAN PRUTZ, and<br>XYZ INSURANCE COMPANIES | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Katherine Prutz' ("Plaintiff") Motion to Remand. (R. Doc. 8). One World Technologies, Inc., ("OWT") and Home Depot U.S.A., Inc., ("Home Depot") (together, "Defendants") oppose the Motion to Remand. (R. Doc. 13). Both parties have filed supplemental memoranda. (R. Docs. 15; 16).

**I.   Background**

On May 3, 2023, Plaintiff filed this action in the 19th Judicial District Court for East Baton Rouge Parish, Louisiana. (R. Doc. 1-1 at 1). The following alleged facts are relevant:

- During the COVID-19 pandemic, Plaintiff began a woodworking project while visiting her father Stan Prutz ("Mr. Prutz") in Baton Rouge. (R. Doc. 1-1 at 2). To help, Mr. Prutz gave Plaintiff a sander (the "Sander") he had purchased at a Home Depot in about 2007. (R. Doc. 1-1 at 2). Home Depot had received the Sander from OWT. (R. Doc. 1-1 at 2).

- Plaintiff "temporarily" took the Sander to her Texas home where, on or about December 17, 2022, Plaintiff was injured when the Sander's fan assembly exploded. (R. Doc. 1-1 at 2). A decade prior, on May 5, 2011, the U.S. Consumer Product Safety Commission had recalled the Sander after sanders of the same type ejected their fans. (R. Doc. 1-1 at 2).

- "[N]either Home Depot nor OWT contacted Mr. Prutz to inform him he possessed a dangerous product. . . . Though it is doubted, in the alternative[,][1] Mr. Prutz was informed of the recall by the other Defendants, and he failed to tell [Plaintiff]." (R. Doc. 1-1 at 2).

---

[1] *Schnell v. Mendoza,* 13-922 (La. App. 5 Cir. 5/21/14), 142 So. 3d 238, 243 (party may plead "facts in the alternative"); *Innovative Data Sys. of Louisiana, Inc. v. Ellender,* 316 So. 2d 12, 14 (La. Ct. App. 1975) (citation omitted) (party may plead alternative causes of action, "even [if] the legal or factual bases [are] inconsistent").

Plaintiff avers she was harmed "due [to] the negligence of OWT, Home Depot, and potentially Mr. Prutz." (R. Doc. 1-1 at 3). She also avers "Home Depot and/or in the alternative, Mr. Prutz," are liable for her damages under La. Civ. Code arts. 2315 through 2317.1. (R. Doc. 1-1 at 4).

On August 28, 2023 and September 7, 2023, Defendants received Mr. Prutz' discovery, revealing (i) he "was not aware of any recall prior to or at the time of" the accident and (ii) "to his knowledge," the Sander was "problem-free" until the accident. (R. Docs. 1-2 at 2, 4; 1-3 at 5, 9). On September 27, 2023, Plaintiff produced both corrupted and accessible electronic medical records, revealing medical bills totaling $8,633.00. (R. Doc. 13 at 8, 9). On October 16, 2023, one of Plaintiff's interrogatory responses revealed she had paid $1,898.30 in medical expenses, while her insurer was billed $96,859.35 and charged $22,777.79. (R. Doc. 1-4 at 6, 7). On October 18, 2023, Defendants received the uncorrupted versions of the medical records. (R. Doc. 13 at 9). Within thirty days, Defendants removed the action on November 15, 2023, alleging that the amount in controversy exceeded $75,000 and that complete diversity exists because "[t]he court should not consider the citizenship of [Mr. Prutz] because he [wa]s fraudulently joined."[2] (R. Doc. 1).

Plaintiff filed the instant Motion to Remand on December 15, 2023, arguing (i) there was no improper joinder, (ii) Defendants untimely removed, (iii) the amount in controversy was not met, (iv) the consent of Mr. Prutz was not obtained, and (v) the forum defendant rule present in 28 U.S.C. § 1441 prevented removal. (R. Doc. 8-1). As Defendants, at best, only alluded to the forum defendant rule in their opposition and Plaintiff's analysis of the rule was limited, further briefing was necessary. On March 14, 2024, this Court ordered the parties to submit additional briefing to address the application of the forum defendant rule under the facts of this case. (R.

---

[2] This Court notes that Mr. Prutz' citizenship does not affect whether the parties in this case are diverse as Mr. Prutz is a Louisiana citizen and Plaintiff is a Texas citizen.

3

Doc. 14). On March 27, 2024, Defendants filed their supplemental memorandum and argued this Court should "extend the improper joinder doctrine to the forum defendant context[.]" (R. Doc. 15 at 2). On April 10, 2024, Plaintiff filed her supplemental memorandum, and argued this Court should not "apply an improper joinder analysis to cases involving a diverse forum defendant." (R. Doc. 16 at 1).

## II. Law and Analysis

### A. Subject Matter Jurisdiction

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed . . ."). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden of proving federal diversity jurisdiction. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

## B.  The Forum-Defendant Rule

### 1.  The Relationship Between the Forum-Defendant Rule and the Improper Joinder Doctrine

"A civil action <u>otherwise removable</u> solely on the basis of the jurisdiction under section 1332(a) of this title [diversity jurisdiction] may not be removed if any of the parties in interest <u>properly joined and served</u> as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). This requirement is often referred to as the "forum-defendant rule," which "is a procedural rule and not a jurisdictional one." *Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020) (citing *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 392-93 (5th Cir. 2009)). The forum-defendant rule exists because removal based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court, but those concerns are absent in cases where the defendant is a citizen of the state in which the case is brought. *Stewart v. Auguillard Const. Co.*, No. 09-6455, 2009 WL 5175217, at *3 (E.D. La. Dec. 18, 2009) (citing *Lively v. Wild Oats*, 456 F.3d 933, 940 (9th Cir. 2006)).

In contrast to the forum-defendant rule, the "improper joinder" doctrine is a jurisdictional doctrine constituting "a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209-10 (5th Cir. 2016) ("In considering whether a nondiverse party was improperly joined . . ., the court is *only* considering jurisdiction."). This jurisdictional doctrine allows a court to ignore the citizenship of a non-diverse defendant, for the purpose of exercising diversity jurisdiction under 28 U.S.C. § 1332, where the removing defendant can establish: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a

5

cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby,* 326 F.3d 644, 646-47 (5th Cir. 2003)); *see Flagg v. Stryker Corp.*, 819 F.3d 132, 136-137 (5th Cir. 2016) (en banc).

The improper joinder doctrine only applies where a district court would lack diversity jurisdiction over a removed action unless the court ignores the citizenship of a non-diverse defendant. In the *Smallwood* decision, the Fifth Circuit replaced the term "fraudulent joinder" in favor of "improper joinder" given the "statutory underpinnings" of the doctrine. *Smallwood*, 385 F.3d at 571 n.1, 572-73 (citing 28 U.S.C. § 1441(b) and 28 U.S.C. § 1359). Nevertheless, the Fifth Circuit has acknowledged that its precedent regarding the "improper joinder" doctrine is "not based upon the text of the statute but rather on the concept that fake or fraudulent joinder of a party to defeat federal jurisdiction should not be approved." *Williams v. Homeland Ins. Co. of New York,* 18 F.4th 806, 812 (5th Cir. 2021); *see also Green v. Amerada Hess Corp.*, 707 F.2d 201, 206 (5th Cir. 1983) (describing fraudulent joinder as a "judicially created doctrine"); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019) (same); *see also Smallwood v. Illinois Cent. R. Co.*, 352 F.3d 220, 224 (5th Cir. 2003) ("[T]he doctrine of fraudulent joinder is a judicially-created exception to the complete diversity rule."), *reh'g en banc granted*, 355 F.3d 357.

"No Circuit, let alone the Fifth Circuit, has conclusively held that the improper joinder doctrine extends to forum defendants." *WF/TX Invs., LLC v. Seneca Ins. Co., Inc.*, No. 19-00751, 2020 WL 1812672, at *3 (E.D. Tex. Apr. 9, 2020); *see Albaugh v. Wind Access Engr., Inc.*, No. 23-146, 2024 WL 625328, at *1 n.1 (S.D. Tex. Feb. 14, 2024) (noting that the Fifth Circuit has not applied the improper joinder doctrine to diverse forum defendants); *Butler v. ENSCO Intercontinental GmbH*, No. 16-578, 2017 WL 496073, at *7 (S.D. Tex. Feb. 7, 2017) (same); *see also Morris v. Nuzzo*, 718 F.3d 660, 666-71 (7th Cir. 2013) (discussing whether the improper

joinder doctrine should extend to the forum-defendant rule without deciding the issue "absent a more thorough and more able presentation of the relevant balance of interests").

Several district courts within the Fifth Circuit have declined to extend the improper joinder analysis to the forum defendant rule where the in-state defendant is otherwise diverse. *See*, *e.g.*, *C&R Transp. Servs., LLC v. Ritchie Bros. Auctioneers (Am.) Inc.*, No. 23-00536, 2023 WL 8937163, at *4 (N.D. Tex. Dec. 6, 2023) ("The improper joinder doctrine does not extend to the forum-defendant rule, and the Court cannot ignore [the diverse defendant's] Texas citizenship."), *report and recommendation adopted*, 2023 WL 8936706 (N.D. Tex. Dec. 27, 2023); *Monical v. Johnson & Johnson*, No. 22-00859, 2022 WL 17835060, at *5 (N.D. Tex. Dec. 20, 2022) ("[T]he Court declines the opportunity to explicitly extend the fraudulent joinder doctrine to the forum defendant rule where the parties are diverse."); *Thick v. Johnson & Johnson*, No. 21-03090, 2022 WL 17834535, at *5 (N.D. Tex. Dec. 20, 2022) (same); *WF/TX Invs.*, 2020 WL 1812672, at *4 (rejecting argument that improper joinder doctrine applied to a diverse forum defendant); *Tipton v. Landen*, No. 15-02811, 2016 WL 919539, at *5 (W.D. La. Mar. 8, 2016) ("[T]he forum defendant rule—a procedural standard—is totally unrelated to the improper joinder doctrine, and there is no basis for conflating improper joinder and the forum defendant rule."); *see also Wehmeyer v. AT&T Corp.*, No. 21-01163, 2021 WL 5349192, at *3 (W.D. La. Oct. 14, 2021) (after noting that the Court could not remand the action *sua sponte* because the forum-defendant rule "is procedural in nature and is not a jurisdictional rule," concluding that regardless of whether the forum defendant was "improperly joined" the Court had subject-matter jurisdiction over the action).

Some district courts, however, have applied the improper joinder doctrine to diverse forum defendants. *See*, *e.g.*, *Rhino Shield Gulf S., LLC v. RSUI Grp., Inc.*, No. 18-11247, 2019 WL 142296, at *4 (E.D. La. Jan. 9, 2019) (applying improper joinder doctrine to a diverse forum

7

defendant); *Stallworth v. Packaging Corp. of Am.*, No. 18-00440, 2018 WL 4869198, at *2 (W.D. La. Aug. 30, 2018) ("Today we join with the courts that assert that improper joinder has already been tacitly extended, or at least should easily be extended, to the forum defendant context, in particular reliance on the 'properly joined' language in the statute."), *report and recommendation adopted*, 2018 WL 6532988 (W.D. La. Dec. 10, 2018); *Gooch v. Packaging Corp. of Am.*, No. 18-00278, 2018 WL 4869425, at *2 n.1 (W.D. La. Aug. 30, 2018) (same), *report and recommendation adopted*, 2018 WL 6036550 (W.D. La. Nov. 14, 2018); *Taylor v. Cavender Buick of Texas Ltd.*, No. 16-724, 2016 WL 6581353 (W.D. Tex. Nov. 7, 2016) (denying remand under the forum-defendant rule after finding that the diverse forum defendants were improperly joined); *Aguilar v. Wal–Mart Stores Texas, LLC*, No. 14-245, 2015 WL 11023492 (E.D. Tex. Jan. 6, 2015) (remanding action under the forum-defendant rule where the removing defendants failed to meet their burden of demonstrating the improper joinder of the diverse forum defendant).

### 2. Application of the Forum-Defendant Rule in this Case

As discussed above, there is no dispute that the presence of Mr. Prutz as a defendant in this action does not destroy diversity jurisdiction. Having considered the plain language of Section 1441(b)(2),[3] the pertinent decisional law, and the arguments of the parties, the Court agrees with the decisions in this Circuit specifically holding that the improper joinder doctrine, as detailed in *Smallwood* and its progeny, does not apply for the purpose of ignoring the citizenship of diverse forum defendants. *See, e.g., C&R Transp. Servs.*, 2023 WL 8937163, at *4 ("Improper joinder is a narrow exception to the jurisdictional requirement of complete diversity, not the procedural requirement of the forum-defendant rule.") (citing *McDonal*, 408 F.3d at 183;

---

[3] "[W]hen the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 438 (5th Cir. 2011) (quotation marks omitted).

8

*Texas Brine*, 955 F. 3d at 485); *WF/TX Invs.*, 2020 WL 1812672, at *4; *Tipton*, 2016 WL 919539, at *5.

The plain language of the forum-defendant rule provides that where a court can exercise diversity jurisdiction over a removed action, that action "<u>may not be removed</u> if any of the parties in interest <u>properly joined and served</u> as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). The record indicates that defendant Prutz, who is a citizen of the forum state of Louisiana, was "properly joined and served" as a defendant prior to removal as those words are used in Section 1441(b)(2). Accordingly, this action is subject to remand.

First, there is no dispute that Plaintiff properly served the defendant Prutz prior to removal. The instant removal was not a "snap removal" that would preclude application of the forum-defendant rule. *See Texas Brine*, 955 F.3d at 486-487 (interpreting the plain language of Section 1441(b)(2) as allowing "snap removal" prior to service on all diverse forum defendants).

Second, the Fifth Circuit refused to adopt the "fraudulent misjoinder" doctrine observed by the Eleventh Circuit, which extends the "improper joinder doctrine to procedural questions concerning party joinder." *See Williams*, 18 F.4th at 814 (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). In the *Williams* decision, the Fifth Circuit emphasized that Section 1441(b)(2), "which does not allow removal 'if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought,' does not reach the question of 'properly joined and served *unless* the "civil action [is] otherwise removable solely on the basis of the jurisdiction under section 1332(a)." *Williams*, 18 F.4th at 815. In other words, the Fifth Circuit specifically observed that the judicially created "improper joinder" doctrine only applies to the analysis of diversity jurisdiction under Section

9

1332(a), not the procedural forum-defendant rule found in Section 1441(b)(2). *Id.*; *see also Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) (distinguishing the "fraudulent joinder" doctrine and "proper joinder" under Rule 20(a) of the Federal Rules of Civil Procedure and similar state joinder law).

Here, the opposition to the Motion to Remand does not challenge the joinder of defendant Prutz as a matter of procedural law. And even if they had, the Fifth Circuit has made it clear that "procedural questions regarding misjoinder . . . are better resolved in state courts prior to removal." *Williams*, 18 F.4th at 815.

In sum, the Court finds it appropriate to remand this action in light of the forum-defendant rule, 28 U.S.C. § 1441(b)(2). There is no dispute that the presence of the defendant Prutz does not destroy diversity and that he was served prior to removal. The improper joinder doctrine, which is a judicially created jurisdictional doctrine that serves as a narrow exception to complete diversity for the purposes of exercising diversity jurisdiction, does not allow a court to ignore the citizenship of a diverse forum defendant.[4] While some district courts in this circuit have logically extended the improper joinder rule in this context, the Fifth Circuit has not. The Court is reminded that the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch*, 491 F.3d at 281-82.

---

[4] In contrast, it is proper for the court to ignore the citizenship of non-diverse forum defendants where those defendants are "improperly joined" for the purposes of exercising diversity jurisdiction. In such circumstances, the improperly joined non-diverse forum defendants must be dismissed, without prejudice, given that the court "never has jurisdiction" over those defendants. *See Int'l Energy Ventures*, 818 F.3d at 209. Accordingly, it is proper ignore the citizenship of "improperly joined" non-diverse forum defendants for the purposes of the forum-defendant rule. *See id.* (affirming denial of remand where the non-diverse forum defendant was improperly joined for jurisdictional purposes); *see also Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (removing defendants need not obtain the consent of non-diverse co-defendants under 28 U.S.C. § 1446(b) where those co-defendants were improperly joined as defendants).

C.     **Improper Joinder**

In the alternative, should this court extend the improper joinder analysis to the forum defendant rule, remand is still appropriate. "A defendant may establish improper joinder in two ways: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.,* 50 F. 4th 469, 473 (5th Cir. 2022) (citing *Travis*, 326 F. 3d at 646-47). As the Defendants have not alleged fraud, this Court will only consider whether Defendants have "demonstrated that there is no possibility of recovery by [P]laintiff against [Mr. Prutz.]" *Smallwood v. Illinois Cent. R. Co.,* 385 F. 3d 568, 573-74 (5th Cir. 2004).

In determining whether there is a possibility of recovery, this Court may "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. When conducting such an analysis, a court must determine whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F. 3d 193, 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if a plaintiff pleads facts that allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F. 3d 228, 239 (5th Cir. 2009). Yet, a court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A Rule 12(b)(6)-like analysis is not this Court's only option, however. "[W]hen a plaintiff has misstated or omitted discrete facts that would determine the propriety of joinder[, a] court may . . . pierce the pleadings and conduct a summary inquiry." *Advanced Indicator,* 50 F. 4th at 473 (citation omitted). "[A] summary inquiry is appropriate only to identify the presence of

11

discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood,* 385 F. 3d at 573-74. As examples of "discrete and undisputed facts" that could be identified through jurisdictional discovery, the Fifth Circuit offers: "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id*. at 574 n.12.

### i.   Removal was Timely and the Amount in Controversy was Met

Plaintiff asserts that Defendants' removal is time-barred because Defendants untimely filed their Notice of Removal. (R. Doc. 8-1). This Court disagrees. While it is undisputed that Defendants began doubting Mr. Prutz' improper joinder more than two months before the Notice of Removal was filed, Defendants could not remove any earlier due to the elusiveness of the amount in controversy. (R. Docs. 1; 8-1). Plaintiffs argue the amount in controversy could have been deduced from Plaintiff's first production of medical records on September 27, 2023, while Defendants argue they were unable to determine the amount in controversy until they received Plaintiff's responses to interrogatories and second production of medical records on October 16, 2023 and October 18, 2023, respectively. (R. Docs. 8-1; 13). After reviewing the record, this Court finds that the amount in controversy could not have been "unequivocally clear or certain" until October 18, 2023. *See Par. of Plaquemines v. Chevron USA, Inc.,* 7 F. 4th 362, 368 (5th Cir. 2021) (citation omitted) ("To start that clock, the information supporting removal in that 'other paper' 'must be unequivocally clear and certain.'"). Therefore, Defendants' Notice of Removal was timely. 28 U.S.C. § 1446 ("If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3).").

12

Plaintiff argues, in the alternative, that the amount in controversy requirement has not been met in this case. This Court finds it has been met, however, because Plaintiff's medical bills totaled more than $96,859.35. (R. Doc. 1-4 at 6, 7). Even if this Court only considered the amounts actually paid by Plaintiff and her insurer, $24,676.09,[5] it is likely a quantum analysis would reveal that Plaintiff's total damages are more than $75,000.00 as Plaintiff (i) has lost vision in her right eye due to blurriness and two dark spots,[6] (ii) will have a diminished earning capacity as she can no longer continue to work in her field of computer software engineering, (iii) has sought a jury trial which is reserved for cases worth at least $50,000.00, and (iv) did not allege her damages are less than $75,000.00. (R. Docs. 1 at 10; 1-4 at 6, 7). As for Plaintiff's argument that the amount in controversy will be less than $75,000, because such was the case in *Shelton v. Hallmark Trucking Insurance Company*, this Court declines to follow *Shelton* as the plaintiff in *Shelton* had no eye surgeries, while this Plaintiff has received two. *See Shelton v. Hallmark Trucking Ins. Co.,* No. CV 17-1683-BAJ-EWD, 2018 WL 1998341, at *3 (M.D. La. Mar. 27, 2018), *report and recommendation adopted sub nom. Shelton v. Hallmark Specialty Ins. Co.,* No. CV 17-01683-BAJ-EWD, 2018 WL 1997543 (M.D. La. Apr. 27, 2018).

### ii.    Plaintiff Pleaded a Cause of Action Under 2317 and 2317.1

When choosing whether to assess improper joinder via a Rule 12(b)(6)-type analysis or a summary inquiry, a "court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." *Int'l Energy*, 818 F. 3d at 207.

---

[5] Defendants state that Plaintiff's past recoverable medical expenses are more than $33,000.00, but this Court is unable to ascertain how Defendants came to this conclusion.

[6] She also suffers from a hyphema, a corneal abrasion, a retinal tear, a retinal detachment, an orbital rupture, cataracts, eyelid and check scars, headaches, migraines, eye strain, and light sensitivity.

This Court proceeds now with a Rule 12(b)(6)-like analysis. Plaintiff claims Mr. Prutz is responsible for her damages under La. Civ. Code arts. 2315 through 2317.1. In Louisiana, liability for damages caused by defective things in one's custody or *garde* is governed by La. Civ. Code. arts. 2317 and 2317.1. *Renwick v. PNK Lake Charles, L.L.C.,* 901 F. 3d 605, 616 (5th Cir. 2018) (citation omitted). To assert a claim under these code articles, Plaintiff must plead that: (1) the Sander was in Mr. Prutz' *garde*/custody; (2) the Sander contained a defect that presented an unreasonable risk of harm; (3) the defect caused Plaintiff's damages; and (4) Mr. Prutz knew or should have known of the defect.[7] *Id.* at 616-17.

To determine whether the first element is met, this Court "must consider whether [Mr. Prutz] had the right of direction or control over the [Sander] and what, if any, benefit [Mr. Prutz] derived from the [Sander]." *Chesney v. Entergy Louisiana, L.L.C.,* 51, 718 (La. App. 2 Cir. 11/15/17), 245 So. 3d 281, 286, *writ denied,* 2017-2095 (La. 2/9/18), 236 So. 3d 1262 (citation omitted); *Carroll v. Am. Empire Surplus Lines Ins. Co.,* 289 F. Supp. 3d 767, 774 (E.D. La. 2017) (same). Plaintiff has clearly pleaded that Mr. Prutz had control and custody over the Sander and derived a benefit from it. First, Plaintiff alleged Mr. Prutz purchased the Sander from a nearby Home Depot, indicating he owns the Sander. (R. Doc. 1-1 at 2). Second, Plaintiff alleges Mr. Prutz possessed the Sander and directed that it be loaned to her, demonstrating his right of direction and control. (R. Doc. 1-1 at 2). Third, Mr. Prutz, before giving the Sander to his daughter, also benefited from the ability to be able to use it. Finally, Plaintiff's petition (the "Petition") asserts Mr. Prutz maintained his right of direction and control after he gave the

---

[7] Recovering under La. Civ. Code arts. 2317 and 2317.1 also requires proof "that a duty of care [existed and] was breached, just as a negligence claim does." *Bd. of Commiss. of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.,* 850 F.3d 714, 729 (5th Cir. 2017). As Defendants do not argue Plaintiff has failed to allege a duty, this Court will not address this issue beyond noting that Plaintiff appears to argue La. Civ. Code. art. 2315 establishes it.

14

Sander to Plaintiff because she only "temporarily" brought the Sander to her home. (R. Doc. 1-1 at 2). Thus, based on these allegations, the Court finds Plaintiff has properly pled element one.

As for elements two and three, they are met by Plaintiff citing the U.S. Consumer Product Safety Commission's recall of the Sander, and alleging she was injured by the Sander. (R. Doc. 1-1 at 2). Regarding element two, courts determine whether a defect poses an unreasonable risk by "balance[ing] the probability and magnitude of the risk against the utility of the thing." *Olivier v. Exxon Mobil Corp.,* No. 18-CV-568-SDD-EWD, 2022 WL 2092480, at *13 (M.D. La. June 9, 2022). In this case, the magnitude of the risk was so great that the Sander was recalled due to the risk of injury; this far outweighs the utility of the Sander. (R. Doc. 1-1 at 2). As for element three, it is clear from the Petition that the defect noted by the U.S. Consumer Product Safety Commission caused Plaintiff's injuries. (R. Doc. 1-1 at 2). Plaintiff notes the Sander was recalled for ejecting its fan, and the Petition reveals the Sander did eject its fan, causing Plaintiff's injuries. (R. Doc. 1-1 at 2). Element three has thus been properly pleaded.

Regarding element four, "a plaintiff must prove that the defendant had actual or constructive knowledge of the vice or defect." *Carroll,* 289 F. Supp. 3d at 776 (citation omitted). Constructive knowledge "is presumed when it is shown that the defect or dangerous condition has existed for such a period of time that knowledge can be presumed or that 'one should have had knowledge of the condition.'" *Greenberger v. Sheraton Operating Corp.,* No. CIV. A. 13-42, 2013 WL 1814928, at *3 (E.D. La. Apr. 29, 2013); *See Carroll,* 289 F. Supp. 3d at 776 ("Constructive notice is the existence of facts which imply actual knowledge."). Constructive knowledge was adequately pleaded in the Petition. Plaintiff alleges that on May 5, 2011, the U.S. Consumer Product Safety Commission announced the Sander was being recalled. (R. Doc. 1-1 at 2). Plaintiff also notes that the announcement occurred as long ago as May 5, 2011, revealing that reasonable diligence would have likely led to the discovery and repair of the Sander's defect.

15

*Carroll,* 289 F. Supp. 3d at 776 ("To establish constructive notice, plaintiff must prove that the defect causing the injury existed over a sufficient length of time to establish that reasonable diligence would have led to its discovery and repair."). Further, although no evidence has been presented regarding the amount of time the subject Sander's defect was present, "Plaintiff may be able to produce such evidence if given further opportunity for discovery." *Greenberger,* 2013 WL 1814928, at *3. This Court will therefore not "presume that no possibility of recovery exists[.]" *Id.* Rather, as each of the above elements has been pleaded, this Court finds Mr. Prutz was properly joined.

      Defendants ask that this Court conduct a summary inquiry to assess whether Mr. Prutz was improperly joined, introducing statements by Mr. Prutz (i) that he "was not aware of any recall prior to or at the time of" the accident and (ii) that the Sander was "problem-free" until the accident. (R. Docs. 1-2 at 2; 1-3 at 5). This Court does not find these self-serving statements to be "discrete facts that would determine the propriety of joinder[,]" because they fail to provide proof that Mr. Prutz had no constructive knowledge as the statements merely detail Mr. Prutz' actual knowledge. *Advanced Indicator,* 50 F. 4th at 473 (citation omitted). As for Mr. Prutz' other discovery responses, they only add that (i) he "used[d the Sander] on several occasions during the years he owned it[,] (ii) he does not possess "any non-privileged, discoverable," documents that either concern the Sander or came from Home Depot or OWT, (iii) he believes the Sander "has remained in Plaintiff's possession since it was given to her during the COVID-19 pandemic[,]" and (iv) he may be covered by a home insurance policy. (R. Docs. 1-2; 1-3; 13-1). None of this information sheds light on Mr. Prutz' potential constructive knowledge, especially as Plaintiff points out that notice of the recall (i) was present on the U.S. Consumer Product Safety Commission's webpage, (ii) was required to be posted as a flyer in Home Depot stores for 120 days or until September 5, 2011, and (iii) was present on numerous tool-focused webpages.

16

(R. Doc. 8-1 at 7, 8, 9). Much more than a summary inquiry would be required to assess the condition of the Sander and whether Mr. Prutz had constructive knowledge. Thus, Defendants' evidence that Mr. Prutz had no actual knowledge does not, at this stage, provide a basis for finding that there is no possibility of recovery by Plaintiff against Mr. Prutz.

Defendants' burden to establish the improper joinder of Mr. Prutz is a heavy one, and the Fifth Circuit has "frequently cautioned the district courts against pretrying a case to determine removal jurisdiction." *Allen v. Red Frog Events, LLC,* 335 F. Supp. 3d 831, 844-45 (M.D. La. 2018) (citation omitted). At this stage of the proceedings, this Court finds that, based on the allegations of the Petition, Plaintiffs have sufficiently stated a claim against Mr. Prutz. As Mr. Prutz is properly joined, removal was improper as a "civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441.

### III. Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that the Motion for Remand (R. Doc. 8) be **GRANTED,** and this action be **REMANDED** to the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana.

Signed in Baton Rouge, Louisiana, on June 6, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**